UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENN WOODARD, JENNIFER RUSSELL,
INDIVIDUALLY AND AS NEXT FRIENDS
OF MINOR CHILD, AW,

  Plaintiffs,

vs

CS PARTNERS LLC, d/b/a
CHARYL STOCKWELL ACADEMY,
CENTRAL MICHIGAN UNIVERSITY, et al.,

  Defendant(s),
_____/

Case No: 2:18-CV-_____
Honorable:
United States District Judge

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs state the following for their Original Complaint against Defendants:

**JURISDICTION AND VENUE**

1. This Complaint contains claims under 42 U.S.C. Section 1983 and jurisdiction of this Court is founded on 28 U.S.C. Section 1343(3) and 28 U.S.C. Section 1331. This action seeks redress for injuries caused in violation of the Civil Rights Act. Accordingly, this Court has jurisdiction over this matter under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, pursuant to violations of Plaintiffs' civil rights by the Defendants. All non-federal claims raised in this complaint are so related to the federal claim as to form part of the same case or controversy within the meaning of Article III to the

United States Constitution so that this Court may exercise supplemental jurisdiction over the non-federal claims herein, pursuant to 28 U.S.C.§ 1331 and 28 U.S.C.§ 1367(b).

2. Venue is proper, because a substantial part of the events giving rise to this action occurred in this judicial district; the matters, acts and or omissions asserted in this Complaint took place in this judicial district.

3. Plaintiffs Glenn Woodard and Jennifer Russell are citizens and residents of the United States of America in the County of Wayne, State of Michigan.

4. Plaintiff Glenn Woodard is the father, custodian, and next friend of the minor child, AW.

5. Jennifer Russell is the mother, custodian and next friend of the minor child AW.

6. Defendant CENTRAL MICHIGAN UNIVERSITY is an entity authorized to conduct business in the State of Michigan, incorporated in the State of Michigan, and is within the State of Michigan. At all times relevant to this action, Defendant CENTRAL MICHIGAN UNIVERSITY conducts continuous and systematic portions of its business in this judicial district.

7. Upon information and belief, Defendant CS PARTNERS LLC ("CHARTER SCHOOL PARTNERS"), doing business as CHARYL STOCKWELL ACADEMY, is an entity authorized to conduct business in the State of Michigan. THE CHARYL STOCKWELL ACADEMY office

2

is located at 9758 E. Highland Road, Howell, MI 48843. At all times relevant to this action, Defendants CHARTER SCHOOL PARTNERS AND CHARYL STOCKWELL ACADEMY conduct continuous and systematic portions of its business in this judicial district.

## GENERAL ALLEGATIONS

8. The Russell-Woodards are the proud parents of minor child, AW. While a brilliant, gifted child, seven-year-old AW suffers from rare neurologic and developmental disorders, including Pediatric Acute-onset Neuropsychiatric Syndrome ("PANS") and Pediatric Autoimmune Neuropsychiatric Disorder Associated with Streptococcal Infections ("PANDAS").

9. PANS/PANDAS are conditions that cause AW's antibodies to attack his brain, affecting AW's motor functions. PANS is a clinical diagnosis given to children with serious, and dramatic neuropsychiatric symptoms. PANDAS is a subset of PANS, in which children also test positive for streptococcal infections. PANS/PANDAS cause vocal and or motor tics, emotional lability and rage, anxiety, food restriction, and Obsessive-Compulsive disorder, among the symptoms. AW suffers from these symptoms. His prior school and medical records noted, "School and its accompanying pressures can *increase* chances of *PANS-induced behaviors* up to and *including meltdowns*."

10. In July of 2018, the Russell-Woodards enrolled their son, AW, into CHARYL STOCKWELL ACADEMY ("CSA") for the upcoming school year. The Family chose

3

CHARTER SCHOOL PARTNERS and its school, CSA, in part, for their commitment to education of "the whole child," and experience with PANS/PANDAS. As responsible parents, the Russell-Woodards routinely seek medical, professional advice and treatment for AW's PANS/PANDAS, neurological condition and overall social development. Thus, the Russell-Woodards have sought experienced physicians, educators, and specialists to meet AW's needs and keep him safe from harm.

11.     AW's parents took steps to advise CSA of AW's ailments, special needs, and specific accommodations during the enrollment process. For instance, AW's mother provided this information to the School on its "Student Enrollment Form," where she clearly listed "PANDAS", and noted AW's disability "requires space and information" on the form. AW's mother also checked "Other Health Impairment" on the form, so CSA would be aware of AW's needs, and make the appropriate accommodations.

12.     During the enrollment process, AW's parents told at least four (4) of Defendants' school administrators that AW had specific ailments, special needs, and must have specific accommodations in place to make his schooling safe and successful. Before school began, AW's mother presented the school with AW's WSIC-IV scores, his neuropsychological evaluation report, and Detroit Public Schools' Psychologist's Report for AW; at the time, School officials did not heed or consider this information for AW. At all times relevant to this matter, CSA had (or should have had) this information before the school year began. AW's 2016 school

4

records advised that AW received individualized accommodations for "OHI" AW's prior school records advised that AW's PANS causes him "anxiety," and "*prevents him from being able to function in large group settings*."

13. Before the school year began, CSA told AW's parents that the school has experience accommodating students with PANDAS. CSA assured AW's parents that the school could—and would—take affirmative and appropriate steps to accommodate AW. Despite such claimed experience, CSA made no accommodations for AW's school year. CSA's failure to process and implement AW's vital enrollment information would lead to catastrophic results for AW—and his parents. Unbeknown to his parents, AW would begin the school year at CSA without his needed accommodations. CSA's failures would expose AW to foreseeably exacerbating conditions for children with PANS/PANDAS.

14. Upon information and belief, CHARYL STOCKWELL ACADEMY routinely exposed AW to unqualified teachers, untrained to interact with children who have PANS/PANDAS—and the Russell-Woodard son, specifically.

15. On or about October 2, 2018, AW was exposed to several untrained and unqualified teachers. With no training or relevant information, CHARYL STOCKWELL ACADEMY'S untrained and unqualified teachers recklessly caused AW to suffer from a PANS/PANDAS-related episode at school. As a result, CHARYL STOCKWELL ACADEMY'S untrained and unqualified teachers triggered AW to meltdown. AW was

5

walked down to the quiet room by a classroom teacher. AW realized he was about to be secluded and it triggered a response consistent with anxiety exhibited in a child with PANS/PANDAS. While trained and qualified teachers would know how to respond the staff at CHARYL STOCKWELL ACADEMY did not. AW was restrained by the administrator and proceeded to be secluded for an hour until his father Glenn Woodard arrived. During the course of the restrained hour he told the administrator "I'm going to pull your pants down" and threatened to punch an administrator "in the boob." Subsequently, CSA's teachers physically restrained and secluded the child, called CPS—then suspended the child indefinitely from school for alleged "criminal sexual conduct," instances of "spitting," "assault" and "damage to school property." CSA secluded AW in a small room. CSA alleged that the seven-year-old special needs child assaulted CSA's staff. CSA's untrained and unqualified teachers recklessly reported false allegations of criminal sexual conduct to Child Protective Services, without good faith, which prompted an investigation and fissure of the family. These allegations were untrue, harmful, and recklessly made.

16. School records show that the Family advised CSA about AW's disability and need for accommodations in June 2018; in the days that followed, Mrs. Jennifer Russell met with the School's Principal—and other teachers—about AW's IDEA-related needs for the upcoming school year. As a result of the conversation, CSA's Principal suggested that AW should begin attending school on a part time basis,

6

given his disability. Plaintiff Glenn Woodard also met with CSA leadership before the school year began, and advised the school of AW's special needs.

17. Defendants ignored parent-supplied information, school records, and applicable protocols, for the Russell-Woodard son—and wrongfully attempted to extract a false accusation of criminal sexual conduct.

18. The accusations of child abuse were unfounded, and made without good faith; nevertheless, DEFENDANTS' reckless allegations produced a lingering and damaging effect on the Russell-Woodard family. Defendants did not educate its agents on the proper protocols for verifying sexual abuse.

## COUNT I: NEGLIGENCE – FAILURE TO TRAIN UNDER 42 U.S.C. § 1983

19. Plaintiffs repeat and incorporate herein the allegations of paragraphs 1 through 18 above.

20. Defendant CSA is a department and/or subsidiary of CENTRAL MICHIGAN UNIVERSITY, and thus an agent acting on behalf of CS PARTNERS LLC and CENTRAL MICHIGAN UNIVERSITY.

21. Defendants knew or should have known AW had been diagnosed with PANS/PANDAS and developmental abnormalities associated with PANS/PANDAS. Defendants knew AW needed accommodations and support throughout his school day. Defendants failed to train its teachers in the proper usage and/or operation of the PANS/PANDAS program for the Russell-Woodard son.

22. As a result of Defendants failure to train, Defendant's teachers negligently exposed AW to PANDAS-exacerbating conditions and recklessly restrained and secluded AW, causing a deprivation of liberty, a clearly established constitutional right.

23. Defendants' failure to properly train its employees on the proper manner of interacting with PANDAS-afflicted students constituted a deliberate indifference to Plaintiffs' recognized constitutional rights.  Defendants' training failures are a usual policy and custom of Defendants.

24. Defendants were operating under the color of state law. Defendants' unconstitutional customs, policies, acts and/or omissions deprived Plaintiffs' of their federal rights to life and liberty, which are guaranteed—and clearly established—under the 14th Amendment of the United States Constitution.

## COUNT II: NEGLIGENCE

25. Plaintiffs incorporate by reference and re-alleges paragraphs 1-24 of this Complaint as if fully set forth herein and for a cause of action alleges as follows.

26. Defendants owed a duty to Plaintiffs of due care and obedience to the common law and statutes of the State of Michigan and the United States, which duties included—by way of illustration and not limitation—the duty to refrain from restraining and secluding students, by mechanical device or any other type of

8

restraint in all circumstances, without Plaintiffs being injured and/or losing personal property. Defendants owed Plaintiff the following duties, including but not limited to:

> a. Complying with MCL 380.1307 et seq., and with the rules and standards promulgated or adopted by reference to this act.
>
> b. Exercising reasonable care, control, supervision, and administration of its premises and work site at CSA, as well as the work conducted by its employees, agents, or outside contractors.
>
> c. Exercising reasonable care, control, supervision, and administration of the work conducted on its behalf by its employees, agents, or outside contractors.

Defendants' failure to comply with these requirements created an unreasonable condition, causing Plaintiffs a deprivation of liberty.

27. Defendants breached their duty of care by the following acts and omissions:

   a. Failure to prevent and/or remedy such hazards that created a foreseeable risk of injury or harm;

   b. Failure to warn the Plaintiffs of known and unknown hazards that created a foreseeable risk of harm;

   c. Creating a hazard on the property that created a risk of injury or harm; and/or

   d. Otherwise acting carelessly and negligently by failing to eliminate or reduce harm-producing conditions on the property by Defendant's failure to take reasonably prudent accident prevention measures.

28. As a result of negligence by Defendant, by its agents or employees, or one of them, Plaintiff suffered damages.

WHEREFORE, Plaintiffs demand judgment against the Defendants in such

9

sum that is fair and just, in excess of $75,000, along with the taxable costs, interest, and attorneys fees, and whatever other relief the Court deems just and proper.

## COUNT III: ABUSE OF PROCESS

29. Plaintiffs incorporate by reference and re-alleges paragraphs 1 through 28 herein.

30. Defendants arbitrarily and capriciously ignored written policy requirements, to the disadvantage of Plaintiffs.

31. Defendants arbitrarily and capriciously denied Plaintiffs of their liberty interests. Defendant failed to follow its established administrative procedures, to Plaintiffs' detriment.

32. Such use of the administrative process was not legitimate, regular, or legal.

33. As a direct result of Defendants' abuse of the administrative process, Plaintiffs have suffered damages.

PLAINTIFFS REQUEST that this Court render a judgment against Defendants for damages consistent with the injuries suffered, along with costs, and attorney fees as the Court deems just and proper.

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34. Plaintiffs hereby incorporate by reference Paragraphs 1 through 33 of this Complaint as if fully set forth herein and for a cause of action alleges as follows.

35. A person may recover damages for intentional infliction of emotional distress if he suffers severe emotional injury caused by Defendants' outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, emotional distress.

36. Defendants, because of both their outrageous actions and reckless disregard of established policies and customs, have erroneously, recklessly, and without good faith, restrained, secluded and exposed AW to PANS/PANDAS-exacerbating conditions.

37. Defendants breached a duty of due care owed to Plaintiffs by failing to adhere to acceptable hiring standards, or provide adequate guidance, oversight, supervision and training to its employees and agents.

38. Defendants breached that duty of due care owed to Plaintiffs by failing to implement or enforce any policy that will preclude and prevent the unlawful processes and procedures which result in the disruption of the family unit by agents and employees.

39. The actions of the Defendants described above are intentional and carried out with deliberate indifference to and callous disregard of the rights, well-being, and best interests of Plaintiffs and their minor child.

40. Each of the actions of Defendants has resulted in Plaintiffs suffering severe emotional injuries, justifying punitive damages against individual defendants, in amounts to be proved at trial.

41. As a result of Defendants' acts and/or omissions, Plaintiffs suffer from injuries including but not limited to: high anxiety; fear of separation from their minor child; emotional distress; inability to sleep or eat.

PLAINTIFFS REQUEST that this Court render a judgment against Defendants for damages consistent with the injuries suffered, along with costs, and attorney fees as the Court deems just and proper.

## COUNT V: ASSAULT & BATTERY

42. Plaintiffs hereby incorporate by reference Paragraphs 1 through 41 of this Complaint as if fully set forth herein and for a cause of action alleges as follows.

43. On or about October 2, 2018, Plaintiff AW was lawfully on the premises of CSA.

44. At that time and place, Defendants made an intentional and unlawful threat to do bodily injury to Plaintiff AW.

45. The threat to Plaintiff AW was made under circumstances that created in Plaintiff AW a well-founded fear of imminent peril.

46. Defendants had the apparent ability to carry out the act if not prevented.

47. The act was not prevented, and Defendants willfully and intentionally struck and restrained Plaintiff AW's arms, legs, and torso.

48. As a direct and proximate result of Defendants' assault and battery of Plaintiff AW, he suffered injury and damage, past, present and future, including the following:

   a. pain, suffering, and emotional distress

   b. humiliation, mortification, and embarrassment

   c. medical expense

   d. other injuries and damages and consequences that are found to be related to the assault and battery that develop or manifest themselves during the course of discovery and trial

49. As a direct and proximate result of the assault and battery, Plaintiffs have suffered a loss of society and companionship.

## COUNT VI: UNLAWFUL SEIZURE OF PERSON
## UNDER SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964

50. Plaintiffs incorporate by reference and re-alleges paragraphs 1 through 13 herein.

51. To sustain a claim under 42 U.S.C. § 1983, Plaintiffs must allege (1) that some person has deprived them of a federal right and (2) the person who has deprived them of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

52.     As parents, Plaintiffs Jennifer Russell and Glenn Woodard have a liberty interest in their family's integrity. The Constitution protects from wrongful governmental interference of parental decisions, as it is "perhaps the oldest of the fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 72 (2000).

53.     Moreover, Plaintiffs Jennifer Russell and Glenn Woodard's parenting right to "bring up children" is a "liberty interest" guaranteed by the Fourteenth Amendment of the Constitution.  *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *see also Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *Santusky v. Kramer*, 455 U.S. 745, 753 (1982)("historical recognition that freedom of personal choice in matters of family life is fundamental"). As the Supreme Court explained in *Prince v. Massachusetts*:

> It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.

*Prince v. Massachusetts*, 321 U.S. 158, 166 (1944). Thus "[p]arental autonomy to care for children free from government interference… satisfies a child's need for continuity and thus ensures his or her psychological and physical well-being." *Newark v. Williams*, 588 A.2d 1108, 1115 (Del. Super. 1990).  *See also* Goldstein, *Medical Care for the Child at Risk: On State Supervention of Parental Autonomy*, 86 Yale L.J. 645, 649 & n. 13 & 14 (1977)(noting that "law does not have the capacity to supervise the delicately complex interpersonal bonds between parent and child.").

54. Defendants' seizure of AW without a court order, consent of the parents, probable cause, or exigent circumstances violated the Plaintiffs' Fourth Amendment right to be secure against unreasonable seizures.

55. Defendants acted under a color of state law when they set in motion a series of events and acts by others that Defendants knew, or should have known, would cause others to inflict a constitutional injury upon Plaintiffs.  Defendants wrongfully deprived Plaintiffs of privileges and/or immunities guaranteed by the Constitution and the laws of the United States.

56. Defendants had no objective reason to believe that another person's life or limb was in immediate jeopardy. Defendants violated Plaintiffs' rights through distortion, misrepresentation, and reckless omission of facts.

PLAINTIFFS REQUEST that this Court enter judgment against Defendant for the following:

(a) A declaratory judgment, pursuant to 28 U.S.C. § 2201 declaring that Defendants' actions were unlawful and violate Plaintiffs' rights under the Section 1983;

(b) Preliminary and injunctive relief pursuant to Fed. R. Civ. P. 65;

(c) Compensatory and exemplary damages;

(d) That Defendant be specifically required to perform contract; and

(e) All other relief that may be proper.

## COUNT VII: CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS, IN VIOLATION OF SECTION 1983 OF THE CIVIL RIGHTS ACT OF 1964

57. Plaintiffs hereby incorporate by reference Paragraphs 1 through 56 of this Complaint as if fully set forth herein and for a cause of action alleges as follows.

58. Defendants conspired by concerted action to accomplish an unlawful deprivation of Plaintiffs' well-established constitutional rights, by unlawful means.

59. Each of the named Defendants committed willful, overt acts in furtherance of the conspiracy.

60. The misconduct described in this Complaint was undertaken with malice, willfulness, and reckless indifference to Plaintiffs' rights.

61. Such acts proximately caused Plaintiffs damages, pain, suffering, embarrassment and humiliation.

## COUNT VIII: FALSE IMPRISONMENT

62. Plaintiffs hereby incorporate by reference Paragraphs 1 through 61 of this Complaint as if fully set forth herein and for a cause of action alleges as follows.

63. Defendants, either individually or through principles of respondeat superior, physically restrained Plaintiff AW and deprived him of his personal liberty and freedom of movement for a period of well over an hour, all with the intention of confining him.

64. Plaintiff AW was conscious of his confinement at all times relevant hereto.

65. Defendants' actions directly resulted in the actual confinement of the Plaintiff.

66. The imprisonment and restraint were against Plaintiff AW's will.

67. Defendants accomplished the imprisonment and restraint by actual physical force, and the deprivation of Plaintiff AW's liberty and freedom was intentional, unlawful, unprivileged, and without probable cause.

68. In addition to the initial restraint and deprivation of personal liberty and freedom of movement being unreasonable, the continued detention and investigation were unreasonable.

69. As a direct and proximate result of Defendants' false imprisonment, detention, and investigation, Plaintiff AW has suffered injury and damage including the following:

   a. physical injuries

   b. pain, suffering, and emotional distress

   c. posttraumatic stress disorder

   d. humiliation, mortification, and embarrassment

   e. other injuries or damages that are found to be related to the occurrence that appear or manifest themselves during the course of discovery and trial

70. Plaintiffs Glenn Woodard and Jennifer Russell, as a direct and proximate result of the Defendants' false imprisonment of Plaintiff AW, have suffered a loss of consortium, society, and companionship.

PLAINTIFFS REQUEST that this Court enter a judgment against Defendants in whatever amount they may be found to be entitled, together with interest, costs, reasonable attorney fees, and other relief that the Court deems just under the circumstances.

I declare that the statements above are true to the best of my information, knowledge, and belief.

Dated: _____   /s/_____
                                  GLENN WOODARD

Dated: _____   /s/_____
                                  JENNIFER RUSSELL

**JURY DEMAND**

Plaintiffs demand a trial by jury.

Respectfully submitted,

/s/ *Allison Folmar*
_____
By: Allison Folmar P60236
*Attorney for Plaintiffs*
24901 Northwestern Hwy.
Suite 612
Southfield, MI 48075
(313) 926-7220 (Business Cellular)
Email: allisonfolmargiv@aol.com

18

DATED: ___/___/2018